UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WALTER W. BROOKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16-CV-00192 JAR |
| | ) |
| CORIZON, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 80) and Plaintiff's Motion to Exclude Defendants' Expert Witness (Doc. No. 71). The motions are fully briefed and ready for disposition.[1]

**I.   Background**

Plaintiff Walter Brookins ("Plaintiff") brings this action under 42 U.S.C. § 1983 against Defendants Corizon, LLC ("Corizon"), and Todd Renshaw ("Renshaw"), Victoria Reinholdt ("Reinholdt"), and Rebecca Henson ("Henson") in their individual and official capacities.[2] At all relevant times, Plaintiff was confined at the Eastern Reception Diagnostic and Correctional Center ("ERDCC") in Bonne Terre, Missouri. Renshaw was employed by Corizon as the Director of Nursing at ERDCC; Reinholdt was employed by Corizon as a nurse practitioner at

---

[1] Defendants filed a memorandum in opposition to Plaintiff's motion to exclude expert testimony on December 28, 2017 (Doc. No. 76); no reply was filed and the time for doing so has passed.

[2] Because the official capacity claim against Renshaw, Reinholdt, and Henson is treated as a claim against Corizon, see Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006) (citing Sanders v. Sears Roebuck & Co., 984 F.2d 972, 975–76 (8th Cir. 1993), they are entitled to summary judgment on Plaintiff's official capacity claim if Corizon is not liable.

ERDCC; and Henson was employed by Corizon as the Assistant Medical Director of Nursing at ERDCC. Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs while he was confined at ERDCC.

According to the operative complaint, while incarcerated at ERDCC, Plaintiff was diagnosed with stomach cancer and underwent a colostomy, a surgical operation in which a piece of the colon is diverted to an artificial opening in the abdominal wall to bypass a damaged part of the colon. After the colostomy was performed, Plaintiff suffered a prolapse, a complication that causes the intestine to protrude out of the body and into the colostomy bag, making it painful to stand up. Plaintiff was prescribed medical lay-ins[3] excusing him from standing for count.[4] Plaintiff alleges that Defendants Reinholdt and Renshaw changed his lay-ins to require him to sit up for count without authorization from the prescribing physician and that Defendant Henson revised his lay-ins in retaliation for his filing a grievance about Reinholdt and Renshaw.

Plaintiff contends the actions of Reinholdt, Renshaw and Henson were taken pursuant to Corizon's policy, custom and practice of changing physicians' lay-in orders without authorization if the restrictions set forth in those orders did not meet with the approval of correctional officers. As a result of Defendants' actions, Plaintiff alleges he is in constant pain and requires additional surgery to correct the damage done by straining to sit up for count. Additional facts pertinent to Defendants' motion are set forth below.

## II.   Legal standard

---

[3] "Medical lay-ins" are physician-issued documents that contain restrictions on an inmate's placement and/or activities because of a medical condition. See Dykes v. Murphy, 4:09–CV–1062 HEA, 2010 WL 2287496 (Mo. E.D. Feb. 25, 2011).

[4] Count refers to the manual counting of each inmate within the prison by MDOC correctional officers. Count occurs four times a day and requires inmates to stand in their cells. Each count typically lasts two to three minutes.

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. Armour & Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

### III.  Facts[5]

While incarcerated at ERDCC, Plaintiff was diagnosed with stomach cancer. He underwent a colostomy on May 16, 2014, and was diagnosed with a prolapse on July 8, 2014. Prolapse occurs in approximately 25 percent of colostomy patients. On July 29, 2014, Plaintiff underwent a sigmoid colectomy.[6] On August 14, 2014, Plaintiff was seen for a follow-up appointment, with plans to have the colostomy closed if there was no evidence of leakage at the anastomosis. On October 2, 2014, a possible confined leak was identified. On October 27, 2014,

---

[5] The facts are taken from Defendants' Statement of Uncontroverted Material Facts (Doc. No. 81) and Plaintiff's Statement of Uncontroverted Material Facts (Doc. No. 85) and are undisputed unless otherwise stated.

[6] A sigmoid colectomy is a surgical procedure to remove part of the left side of the colon known as the sigmoid colon. The surgeon then re-makes the join (anastomosis) between the remaining left side of the colon and the top of the rectum. See www.cedars-sinai.edu/Patients/health-Conditons/Sigmoid-Colectomy (last visited Sept. 17, 2018).

Plaintiff was examined by Dr. Emmanuel Afuwape, the Medical Director for ERDCC at that time.

**Lay-In I**

During the examination on October 27, 2014, Dr. Afuwape found Plaintiff's prolapse became more pronounced on standing. Dr. Afuwape wrote a lay-in order for Plaintiff stating "unable to participate in work activities" and "PT is excused from getting up for count," with a begin date of October 27, 2014 and an end date of October 27, 2015. On November 20, 2014, Plaintiff was examined and assessed by Dr. Afuwape. At that time, Dr. Afuwape noted Plaintiff had no pain, nausea or vomiting and was able to ambulate behind a wheelchair.

**Lay-In II**

On December 15, 2014, after speaking with Charles Chastain, M.D., then Medical Director at ERDCC, Renshaw wrote a second lay-in order discontinuing Dr. Afuwape's instruction that Plaintiff be excused from getting up for count and stating "Lay-in for allow to lay down through count has been deemed a serious custody concern. Due to safety and security, the patient must get out of bed for count." Renshaw was notified by Custody that Plaintiff was laying down and sleeping through count, which was "against the rules." (Deposition of Todd Renshaw ("Renshaw Depo.") Doc. No. 81-2 at 32:9-13) Lay-In II continued Plaintiff's unable to work restriction. Lay-In II had a start date of December 15, 2014 and an end date of December 15, 2015.

On December 30, 2014, Plaintiff was approved for a colostomy revision. On February 5, 2015, Reinholdt saw Plaintiff for an assessment and determined that his lay-in was appropriate. On March 16, 2015, Reinholdt examined Plaintiff and found "[p]atient has chronic pain and discomfort due to 16-17 cm colostomy prolapse." Reinholdt noted "continued prolapsed of

colostomy . . . , circulation intact, stoma continues to function. No bloody stools, no blockage . . . ." Plaintiff was given Tylenol for pain.

On March 26, 2015, Dr. Chastain examined Plaintiff and found a "progressive herniation of colostomy, now 27 cm long, and painful. Revision not to include closure, is scheduled in 3 mo; Pt needs it done ASAP, to preclude further extension, reduce probability of infection, and control pain."

### Lay-In III

On April 14, 2015, Reinholdt examined Plaintiff and noted, "have had lengthy discussion with patient in regard to need for revision as his prolapse continues to progress and I am concerned if at least revision is not complete [sic]." Reinholdt also noted that Plaintiff "is able to reduce prolapse when he is supine, but takes him some time to get it to go back in. This has caused problems with getting up from bunk during multiple counts." Reinholdt entered a new lay-in order stating that Plaintiff was "unable to stand for count until corrective surgery completed." Lay-In III had a begin date of April 14, 2015 and an end date of June 14, 2015. Although the record is unclear as to whether Lay-In III discontinued Lay-In II, Corizon's Rule 30(b)(6) representative explained that correctional officers would be assumed to follow the most recent lay-in order. (Deposition of Cynthia Schupp ("Schupp Depo."), Doc. 85-4 at 58:16-22)

### Lay-In IV

On May 19, 2015, Renshaw issued a new lay-in order that Plaintiff "may sit on bunk during count – medical condition prevents quick rising from bunk." The entry in Plaintiff's medical file indicated that "per institutional policies," "[C]ustody will not allow patient to lay down during count." Lay-In IV had a begin date of May 19, 2015 and an end date of May 19,

2016. The parties dispute whether Lay-In IV discontinued Lay-In II or III; Renshaw spoke with Dr. Chastain, who agreed to enter Lay-In IV, changing Lay-In III. (Renshaw Depo. at 31:14-20)

**Informal resolution request (IRR)**

On May 26, 2015, Plaintiff filed an IRR with Corizon complaining that Renshaw changed his lay-in without consent from Dr. Chastain. In his IRR, Plaintiff reported he did his best to rise for count but that getting up was painful and that blood came out of his colostomy bag. Henson met with Plaintiff on July 7, 2015 and characterized his concern as follows: "you wish to be able to remain in bed lying down for counts because you have a revised colostomy." After noting multiple eyewitness accounts of Plaintiff walking and sitting up on his own, and after discussion with Dr. Chastain, Henson determined Plaintiff was safely able to sit up for Count. (Deposition of Rebecca Henson ("Henson Depo."), Doc. No. 81-4 at 41:1-8) She denied Plaintiff's request, finding "no medical indication … for lying down for counts." Specifically, Henson noted:

> Subsequent to review and investigation, you are currently using a wheelchair for distances and can stand for short periods of time. Therefore, you have a lay in restriction from medical allowing you to sit for counts rather than stand. You came to medical for your IRR discussion sitting up in your wheelchair and told me that you do go to main line and sit up for meals. You also reported to me that you are a smoker and sit up in your wheelchair to smoke. I discussed your request to lie down for counts with the physician. There was no medical indication found for lying down for counts. In conclusion, you may sit up for counts rather than stand.

**Lay-In V**

Plaintiff was scheduled for revisional surgery of his colostomy on June 16, 2015, which was delayed because of cardiac complications. On June 24, 2015, Plaintiff was seen by Dr. Chastain. At this appointment, Plaintiff indicated he did not want to attempt revision again at this time, given his previous cardiac issues. Dr. Chastain examined Plaintiff and advised "[e]xtend

lay-in re standing or sitting for count." Dr. Chastain entered a new lay-in order stating "PT has extensive protrusion of colon since cancer surgery and has trouble raising up to sit; needs recumbent for count." Lay-In V had a begin date of June 24, 2015 and an end date of September 30, 2015. Lay-In V did not discontinue any previous lay-in orders and ran concurrently with Lay-Ins II and IV.[7] On July 7, 2015, Dr. Chastain issued a verbal order allowing Plaintiff to "sit for count as in current lay in."

**Lay-In VI**

On July 21, 2015, Dr. Chastain discontinued Lay-In V with Lay-In VI. Lay-in VI had the same instructions as Lay-In V but a begin date of July 21, 2015 and an end date of November 1, 2015. The parties dispute whether Lay-in VI ran concurrently with Lay-Ins II and IV or replaced them.

Plaintiff underwent colostomy reversal on October 12, 2015.[8] A hernia is a possible side effect of any abdominal surgery. On March 31, 2016, Dr. Jonathan Roberts determined that Plaintiff had no symptoms from a small incisional hernia, and that the risk of the laparoscopic incisional hernia repair was prohibitive.

**IV.    Discussion**

**A. Renshaw, Reinholdt, and Henson**

To establish a claim under section 1983 against Renshaw, Reinholdt, and Henson, Plaintiff must show they were deliberately indifferent to his serious medical needs. Johnson v. Hamilton, 452 F.3d 967, 972–73 (8th Cir. 2006) (citing Camberos v. Branstad, 73 F.3d 174, 175 (8th Cir. 1995)). To show deliberate indifference, Plaintiff must prove that he suffered from one

---

[7] The parties dispute whether it is a common practice to rewrite lay-ins recurrently, see Doc. No. 81 at 46; Doc. No. 85 at 15; however, as noted above, Corizon's Rule 30(b)(6) representative explained that corrections officers would follow the most recent lay-in order. (Schupp Depo. at 58:16-22)

[8] A colostomy reversal is when the intestines are reconnected to the rectum.

or more objectively serious medical needs, and that defendants actually knew of but deliberately disregarded those needs. Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014). This is an extremely high standard that requires a mental state "akin to criminal recklessness." Id. (quoting Scott v. Benson, 742 F.3d 335, 340 (8th Cir. 2014)). Thus, Plaintiff must show "more than negligence, more even than gross negligence." Fourte v. Faulkner Cty., Ark., 746 F.3d 384, 387 (8th Cir. 2014) (quoting Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)). He must demonstrate that Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Dulany v. Carnahan, 132 F.3d 1234, 1240–41 (8th Cir. 1997). A plaintiff cannot successfully demonstrate deliberate indifference by alleging facts which show merely that he disagreed with the treatment offered to him, or that prison officials failed to implement his chosen form of treatment. Jolly, 205 F.3d at 1096; Long v. Nix, 86 F.3d. 761, 765 (8th Cir. 1996). Further, when a claim of deliberate indifference is based on a delay in treatment, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997); accord, Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002).

Plaintiff has presented evidence of an objectively serious medical need that officials knew of, see Barton v. Taber, 820 F.3d 958, 964 (8th Cir. 2016) (medical need is serious if obvious to a layperson or supported by medical evidence, like a physician's diagnosis). Thus, this case turns on whether Defendants deliberately disregarded those needs. Plaintiff claims Defendants were deliberately indifferent to his serious medical needs by changing his recumbent lay-in restrictions and requiring him to stand for count for nearly four months, and then sit up for count. Plaintiff asserts that as a result of Defendants' actions, he suffered extreme pain by

straining to sit up and required another prolapse surgery. He is currently waiting for hernia surgery. Plaintiff claims Defendants changed his lay-in orders because of a Department of Corrections (DOC) policy that inmates must stand for count, but gave conflicting accounts as to what the policy actually required.[9] Lastly, Plaintiff argues that Defendants demonstrated deliberate indifference to his medical needs by entering confusing and conflicting lay-in orders, leading to harassment by prison officials and conduct violations.

In support of their motion, Defendants argue they were not deliberately indifferent to Plaintiff's medical needs given the continuous monitoring and treatment he received for his complaints, and that Plaintiff merely disagrees with the course of treatment provided him. Defendants further argue there is no evidence of a Corizon policy, custom, or practice of changing a physician's lay-in restrictions without authorization at the request of correctional officers and no support for Plaintiff's assertion that Defendants' actions have resulted in permanent damage to his health.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff was required to stand for count for approximately four months, from December 15, 2014 – when Lay-In I was discontinued – to April 14, 2015 – when Lay-In III was entered. Thereafter, a number of lay-in orders were entered requiring Plaintiff to sit up for count. Plaintiff has presented no evidence that he was unable to either stand or sit up. It is undisputed that Plaintiff was able to ambulate behind a wheelchair and walk for short distances. He was observed smoking in his wheelchair, sitting in a wheelchair while being pushed, and pushing his own wheelchair on several occasions. Plaintiff admitted using a wheelchair to go to meals, sitting up for meals, and sitting at a table outside for

---

[9] Reinholdt testified that a patient must always stand for count (Reinholdt Depo., Doc. No. 85-2 at 13:12-14:22) and Renshaw testified that excusing a patient from getting up for count was "against the housing unit rules" (Renshaw Depo., Doc. No. 85-3 at 33:13-24). It was the testimony of Henson and Corizon's Rule 30(b)(6) representative that a patient can be excused from standing for count if medically necessary (Henson Depo. at 26:5-7; Schupp Depo., Doc. No. 85-4 at 33:14-18).

smoking breaks. Plaintiff also testified he would at times sit up in his bed on his own to read or make phone calls. Corizon offers offenders who are unable to stand for count a bed in the infirmary, but according to Defendants, Plaintiff refused the offer because he would not be allowed to smoke. In the absence of any medical indication for laying down for count – which presented safety and security concerns for the prison – Plaintiff was required to sit up for count.

Plaintiff claims the strain to his abdomen from sitting up for count caused his intestine to prolapse to 27 cm outside his abdomen as well as a hernia measuring 6 cm in diameter. Plaintiff has presented no verifying medical evidence, however, that sitting for count caused his prolapse to get bigger or caused his hernia, relying only on his own conclusory allegations regarding causation. His testimony alone is insufficient to establish a genuine issue of material fact for purposes of summary judgment. See Gibson v. Weber, 433 F.3d 642, 646-47 (8th Cir. 2005) (affirming summary judgment on a deliberate indifference to serious medical needs claim where plaintiff had no expert medical testimony to prove that the defendants' actions caused his injuries). An inmate has the burden of proof to show causation between the alleged acts and the alleged damage. Robinson v. Hager, 292 F.3d 560 (8th Cir. 2000). Bare assertions are insufficient to support a claim of deliberate indifference to serious medical needs. Aswegan v. Henry, 49 F.3d 461, 465 (8th Cir. 1995). A prisoner's suit in such a case must fail if he does not present any "verifying medical evidence … that defendants ignored an acute or escalating situation or that delays adversely affected his prognosis." Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995) (quoting Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995)); see also Crowley, 109 F.3d at 502. In fact, Plaintiff has not provided so much as an affidavit attesting to his medical issues. See Mazzie v. Corr. Med. Servs., Inc., No. 2:04 CV 00081 AGF, 2006 WL 2850546, at *3-4 (E.D. Mo. Sept. 30, 2006) ("[T]his is not an unduly burdensome requirement.

Even in regular malpractice cases, where only negligence must be proven, many states require a plaintiff to file an affidavit identifying each medical expert the plaintiff plans to call at trial and the substance of each expert's expected testimony."). In the absence of such evidence, Plaintiff fails to raise a genuine issue of fact on an essential element of his claim. Jackson v. Riebold, 815 F.3d 1114, 1119-20 (8th Cir. 2016).

Further, there is no dispute that Plaintiff received continuous care and treatment, as evidenced by his medical records. (See Doc. No. 81-5) At most, the evidence establishes Plaintiff's disagreement with Defendants' treatment decisions. As discussed above, a plaintiff cannot successfully demonstrate deliberate indifference by alleging facts which show merely that he disagreed with the treatment offered to him, or that prison officials failed to implement his chosen form of treatment. Jolly, 205 F.3d at 1096; Long, 86 F.3d at 765. Thus, Plaintiff's claims against Renshaw and Reinholdt for deliberate indifference fail as a matter of law.

As for Plaintiff's specific claim that Henson changed his lay-in restrictions in retaliation for filing an IRR against Renshaw and Reinholdt, Plaintiff has a substantial burden to prove that retaliation was the actual motivating factor. Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993). As discussed above, after discussion with Dr. Chastain, Henson denied Plaintiff's request to remain in bed lying down for count, finding no medical indication for such a lay-in. In support of her determination that Plaintiff was safely able to sit up, Henson noted multiple eyewitness accounts of Plaintiff walking and sitting up on his own. Because Plaintiff has not come forward with any evidence that Henson was motivated solely by an intent to retaliate against him, his claim against Henson fails as a matter of law.

**B. Corizon**

To support a claim against Corizon under § 1983, Plaintiff must show there was a policy, custom, or official action that inflicted an actionable injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Johnson v. Hamilton, 452 F.3d 967, 972–73 (8th Cir. 2006) (citing Sanders v. Sears Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993)). Plaintiff contends Corizon maintained a policy of changing a physician's orders without authorization if the prisoner's restrictions set forth in those orders did not meet with the approval of correctional officers. Plaintiff points to Defendants' reference to "custody concern[s]" and "safety and security" and argues that Defendants have not produced a DOC policy regarding count and have conflicting accounts as to what the policy actually requires.

Based on the record before it, the Court finds there is sufficient evidence of a DOC policy requiring offenders to stand for count unless they are excused for medical reasons that is reasonably related to prison safety and security. Corizon has no involvement with count. According to Corizon's Rule 30(b)(6) representative, if a medical provider sends a lay-in to the custody staff that initiates a safety concern, then "[DOC] has the ability to let us know that they have a concern about that. And many . . . times we reevaluate patients based on [C]ustody's feedback" and the patient's medical needs. (Schupp Depo. at 73:3-15; 81:15-23).

In determining whether a corporation acting under color of state law is liable under § 1983, the "proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." Sanders, 984 F.2d at 976. As with supervisory defendants, corporations are not liable under § 1983 on a respondeat superior theory alone. Monell, 436 U.S. at 691; Sanders, 984 F.2d at 976. When, as here, a § 1983 plaintiff fails to adduce sufficient evidence of an actionable injury in connection with his medical treatment, his claims against the corporation for its policies or customs also fail. See Jackson v. Douglas,

270 Fed. App'x. 462, 463 (8th Cir. 2008) ("Because no constitutional violation occurred in connection with Jackson's medical treatment, Jackson's claims against CMS ... also fail."). Thus, Defendants' motion will be granted as to Corizon because Plaintiff has failed to adduce sufficient evidence of an injury actionable under § 1983 or of an unconstitutional policy or custom. See Holloway v. Corr. Med. Servs., No. 4:06CV1235 CDP, 2010 WL 908491, at *13 (E.D. Mo. Mar. 9, 2010).

## V. Conclusion

For the reasons discussed above, the Court finds and concludes that Defendants have established their entitlement to summary judgment as to Plaintiff's claims against them.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [80] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude Defendants' Expert Witness [71] is **DENIED** as moot.

A separate Judgment will accompany this Memorandum and Order.

Dated this 20th day of September, 2018.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**